UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

STEPHANIE M. FLYNN,

                      Plaintiff,

      v.                                                 Case # 19-CV-6315-FPG
                                                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
───────────────────────────────────────

**INTRODUCTION**

Plaintiff Stephanie Flynn brings this action pursuant to Title XVI of the Social Security Act seeking review of the denial of her application for Supplemental Security Income ("SSI").

Plaintiff protectively applied for SSI on November 25, 2015, alleging disability since April 7, 2004 due to panic attacks, PTSD, anxiety, depression, migraines, and degenerative disc disease. Tr[1]. 180-86, 203. After the Social Security Administration ("SSA") denied her application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 30-78. On March 23, 2018, the ALJ issued an unfavorable decision. Tr. 15-30. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. Tr. 1-5; ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. § 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 16. For the following reasons, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

**LEGAL STANDARD**

I.   **District Court Review**

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II.   **Disability Standard**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of the claimant's age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467,

470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.920.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine disorder, obesity, anxiety disorder, and affective disorders. Tr. 15. At step three, the ALJ found that none of Plaintiff's impairments meet or medically equaled the criteria of any Listings impairment and determined that Plaintiff retained the RFC to perform sedentary work with additional postural and exertional restrictions. Tr. 15-25. At step four, the ALJ found that Plaintiff had no past relevant work, and at step five, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy. Tr. 24-26. Accordingly, the ALJ found that Plaintiff was not disabled. Tr. 26.

### II. Analysis

Plaintiff argues that, regarding her back pain, the ALJ erroneously evaluated her treatment history, her failure to engage in physical therapy, and her activities of daily living. Because the Court agrees, it need not address Plaintiff's other arguments.

The Court first discusses the ALJ's erroneous evaluation of Plaintiff's treatment for her back pain. The ALJ noted that Plaintiff had been prescribed several medications to manage her back pain, which he said "weigh[ed] in her favor," but he then qualified that statement by noting that no treatment provider had indicated that the medications were ineffective in managing her pain. Tr. 20. This statement is inconsistent with the record, which shows that Plaintiff continued

to complain of pain despite being placed on varying dosages and combinations of medication. In 2013, one of Plaintiff's doctors indicated that she had "failed medication management" and would need to consider interventional treatments. Tr. 468. Plaintiff also tried injections and a TENS unit without success. Tr. 464, 468-471. In November 2015, Plaintiff's treating physician, Dr. Gaylinn Greenwood, continued Plaintiff on some of her medications but noted that her pain remained unchanged. These treatment notes suggest that medication was not, in fact, effective, but the ALJ does not acknowledge this contrary evidence.

      The ALJ also considered Plaintiff's treatment for her back to be conservative and stated that the absence of additional injections or a referral for surgery indicated that Plaintiff was not disabled. Tr. 21. But injections had already proven unsuccessful, and it is not clear what basis the ALJ had to conclude that more aggressive medication or surgery would have been appropriate or helpful. An ALJ errs by discrediting a plaintiff for not undertaking treatment when there is no evidence that such treatment would be expected to work. *Plouffe v. Astrue*, No. 3:10 CV 1548 (CSH), 2011 U.S. Dist. LEXIS 140781, at *73 (D. Conn. Aug. 4, 2011); *see also Arias v. Saul*, No. 18-cv-1296(KAM), 2020 U.S. Dist. LEXIS 72957, at *25 (E.D.N.Y. Apr. 25, 2020) ("Any assumption that additional or more aggressive treatments existed for plaintiff's condition was pure conjecture on the ALJ's part. . . ."); *Grubb v. Apfel*, No. 98 Civ. 9032 (RPP), 2003 U.S. Dist. LEXIS 22938, at *14 n.8 (S.D.N.Y. Dec. 22, 2003) ("A medical condition that *can reasonably be remedied* either by surgery, treatment, or medication is not disabling." (emphasis added)). Here, the ALJ identified no evidence from which it could be reasonably inferred that more aggressive medication or surgery would have been appropriate or helpful. Tr. 537. To the contrary, Dr. Greenwood indicated that narcotics treatment was not recommended for Plaintiff because she had occasionally used recreational drugs and her brother was a heroin addict, both facts that placed her

at high risk for opioid misuse. Tr. 537. Accordingly, the ALJ could not reasonably find that Plaintiff's symptoms were nonsevere on the theory that Plaintiff was not prescribed stronger pain medication. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (holding that an ALJ may not impose his notion "that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered").

Next, the ALJ erred when he discounted the limiting effects of Plaintiff's pain because Plaintiff had discontinued physical therapy despite positive results. In reaching his conclusion, the ALJ appears to have ignored the evidence showing that the results of physical therapy were mixed at best. In 2012, one treatment provider noted that Plaintiff had "shown a poor response to physical therapy" and that it would be discontinued. Tr. 464. Another provider noted that Plaintiff had missed multiple appointments for various reasons, such as being sick or lacking a ride. Tr. 465. Although Plaintiff had exhibited some improvement in 2012 after eleven sessions, she had only improved 25-50 percent and continued reporting pain. Tr. 466. In 2016, Plaintiff was reported to have made some gains in physical therapy, but she was also noted to have trouble with consistency due to a "chronic condition which is not well controlled." Tr. 564. In 2017, she presented to physical therapy with much of the same symptoms as in 2016, including lumbar lordosis, increased forward shoulders, decreased gait speed, and guarded trunk movements. Tr. 529-30. There was no assessment of progress on discharge after five sessions, and although she was discharged for multiple cancellations and a lack of consistency, her treatment provider noted that the cancellations were due to illness and that Plaintiff "need[ed] to get other health issues in order." Tr. 589.

The ALJ concluded that Plaintiff's failure to engage in therapy was "not the behavior one would expect from an individual alleging disability due to chronic low back pain." Tr. 20. But,

5

as discussed, some evidence in the record suggests that Plaintiff's behavior was a result of her pain, and the ALJ ignored these indications. The ALJ's failure to consider the reasons for Plaintiff's inconsistency with physical therapy undermines his conclusion that she was not disabled. *See Orr v. Barnhart*, 375 F. Supp. 2d 193, 201 (W.D.N.Y. 2005) (holding that "the ALJ must not draw any inferences about plaintiff's symptoms and their functional effects based on a failure to seek treatment without first considering any explanation or good cause for not doing so" and remanding where the ALJ nevertheless "determined that plaintiff was not disabled because she failed to seek medical treatment, but he did not consider these explanations").[2]

Finally, the ALJ mischaracterized Plaintiff's ability to perform activities of daily living to support his conclusion that she was capable of sedentary work. The ALJ found that Plaintiff could dress, bathe, groom herself, cook, clean, do laundry, and shop—seemingly without any limitations. Tr. 23. But that is not an accurate summation of Plaintiff's reports. In 2016, Plaintiff reported that she could no longer "clean thoroughly" or cook by herself. Tr. 212. She stated that she could only clean in spurts of ten minutes at a time. Tr. 213. She could only fix "short, simple meals" that "do not take a lot of prep time" and had been reduced to cooking one to three times a week, whereas she used to be able to cook seven days a week. Tr. 213. She also could not bend over to put shoes and socks on and had difficultly putting pants on. Tr. 212. She reported trouble bathing, shaving, and using the toilet because it was hard to bend to the side. Tr. 212-13. She indicated that she needed help with groceries and the laundry and could only grocery shop one to two times a month for an hour or two at a time. Tr. 214.

---

[2] It is also not clear that Plaintiff's persistence with physical therapy would have enabled her to work. *See Theresa S. v. Berryhill*, No. 2:17-cv-00122, 2019 U.S. Dist. LEXIS 55310, at *44 (D. Vt. Apr. 1, 2019) ("[A] claimant may be denied disability benefits if the Secretary finds that she *unjustifiably* failed to follow prescribed treatment and that if she had followed the treatment, she would not be disabled under the Act.") (quoting *Grubb*, 2003 U.S. Dist. LEXIS 22938, at *14).

Thus, the ALJ's conclusion that Plaintiff could perform a variety of daily activities without encumbrance rests on a mischaracterization of the evidence, and "[i]t is well-settled that an ALJ may not mischaracterize the record, nor rely on such a mischaracterization to meet the substantial evidence test." *Hill v. Comm'r of Soc. Sec.*, No. 14-CV-9665, 2017 WL 5632813, at *5 (S.D.N.Y. July 28, 2017).

The Court acknowledges that there is other evidence that may support the ALJ's RFC determination, including the opinion of Plaintiff's treating physician's opinion. Tr. 25, 539, 574, 583, 598. But because much of the ALJ's analysis is reliant on the errors discussed above, the Court finds that remand is required. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 19, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court